794 P.2d 1381

**RAMCO, an Idaho corporation,
Plaintiff–Respondent–Cross–Appellant,**

v.

**H–K CONTRACTORS, INC., an Idaho
corporation, Defendant–Appellant–
Cross–Respondent.**

No. 17734.

Supreme Court of Idaho.

June 15, 1990.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for defendant-appellant-cross-respondent. Curt R. Thomsen argued, Idaho Falls.

Hall, Farley, Oberrecht & Blanton, Boise, for plaintiff-respondent-cross-appellant. Phillip S. Oberrecht argued, Boise.

McDEVITT, Justice.

In 1984, H–K Contractors, Inc. (H–K) reorganized following a difference of opinion by the three principal shareholders, Ranstrom, Charles and Foster. Under the reorganization plan, Ranstrom was to "spin-off" to form Ramco, Inc., and H–K was to transfer certain corporate assets to Ramco. Part of the transfer of assets to Ramco was 24.26% of tax savings to H–K due to its accumulated net operating loss carryover. At issue in this case is the distribution of that net operating loss tax carryover (NOL).

The reorganization plan also included a sale by Ramco to Ada Sand and Gravel Construction, Inc. (ADA) of all the equipment Ramco had obtained from H–K.

On July 2, 1984, the shareholders of H–K signed an Agreement in Principle and a Plan of Reorganization and Stock Exchange Agreement. Ramco claims that this July agreement was the first time that there was an actual agreement on the reorganization plan. H–K claims that there was a series of agreements negotiated on each particular asset of H–K to be divided as part of the reorganization, including a May, 1984 agreement concerning the division of the NOL.

The significance of this difference of opinion is that the answer determines whether or not a tax gain recognized by H–K as a result of Ramco's sale of equipment to ADA reduced the total NOL or only reduced Ramco's 24.26% share of the NOL. Ramco argues that the July agreement expressly states that the gain reduced the total NOL, whereas H–K argues that the May agreement provides that the gain was to be deducted from Ramco's 24.26% share of the NOL, and that Ramco owed H–K approximately $13,000 in overpaid NOL tax savings.

Ranstrom filed suit in February of 1987 to recover 24.26% of tax savings that H–K had obtained from its NOL. H–K counterclaimed for amounts allegedly owing from a certain sale of gravel in July of 1984; it also requested reformation of the July re-

organization plan to reflect the May agreement.

The jury returned a special verdict in favor of Ramco in the amount of $310,202, representing NOL tax savings wrongfully withheld by H–K. H–K also won some relief on its counterclaim for the sale of gravel. Motions for judgment notwithstanding the verdict and new trial by both parties were denied. Costs were awarded to Ramco as the prevailing party.

H–K alleges that the trial court erred in denying its motion for judgment notwithstanding the verdict or new trial. H–K argues that the court erred in instructing the jury, that the court improperly excluded impeachment evidence as prejudicial, and that the court erred in failing to make findings of fact and conclusions of law on the equitable issue of reformation. H–K also challenges the award of costs to Ramco as the prevailing party.

H–K asserts that the trial court should have granted its motion for judgment notwithstanding the verdict or new trial. In the context of the motion for judgment notwithstanding the verdict the question is whether the jury's verdict is supported by substantial and competent evidence such that a reasonable person could conclude that they jury verdict was proper. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974). Even if there is substantial evidence to support a verdict, the trial judge may set it aside upon a motion for a new trial if the court feels that the verdict is against the weight of the evidence. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). "If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed," the grant of a motion for new trial is proper. *Wright & Miller, Federal Practice and Procedure* § 2806, at 49, quoted in *Quick v. Crane,* 111 Idaho at 768, 727 P.2d 1187. Our function in the context of the motion for new trial is to determine whether the trial judge committed a manifest abuse of discretion in denying the motion. *Tibbs v. City of Sandpoint,* 100 Idaho 667, 603 P.2d 1001 (1979).

We conclude that the trial court did not err in allowing the jury's verdict to stand and denying the motion for new trial.

There was conflicting evidence presented as to whether the intent of the contracting parties was to deduct the gain from the equipment sale to ADA from the entire NOL, or only from Ramco's 24.26% share. Evidence in Ramco's favor was to the effect that the July agreement was the final, executed embodiment of the reorganization plan, and that no agreement was reached as to prior drafts. That document expressly stated that the gain from the equipment sale was to be deducted from the total NOL, before it was apportioned between the parties. There was testimony from several sources that the July agreement reflected the final and true intention of the parties.

On the other hand, H–K presented evidence of a prior draft of the agreement, which it argued had been independently agreed upon in May, reducing only Ramco's share of the NOL. H–K presented evidence that the language of that draft was subsequently changed on the advice of Ranstrom's accountant, intentionally making it vague in order to avoid later tax problems, without intending a change in the actual terms of the agreement. Thus, it argues that the terms of the document, being vague may be supplemented by other evidence of the intent of the parties. The trial court did allow parol evidence going to the intent of the parties at trial, and testimony was presented to the effect that the May document reflected the true contractual intention of the parties.

Based upon all of this evidence, the jury found in favor of Ramco. Although the evidence was conflicting, it was within the province of the jury to weigh the credibility of the evidence presented on each side. There is substantial and competent evidence to support its determination, and the trial court did not err in denying H–K's motion for judgment notwithstanding the verdict.

H–K also charges that the trial court erred in formulating its instructions to the jury. The district court slightly

modified an IDJI instruction by changing the word "are" as found in the standard version of the instruction, to the words "could be" in the instructions given to the jury in this case:

> The Court has determined that the terms of the Agreement *could be* unclear as to the manner in which the parties intended to compute RAMCO'S share of tax savings arising from the net operating loss carryover of HK and the treatment of the gravel inventory in the spin-off agreement.... It is up to you, the jury, to determine the facts as they related to the ... method of dividing the potential tax savings from H–K's net operating loss carryover. (Emphasis added.)

The change made by the court converts the instruction from one conclusively establishing the ambiguity of the document as a matter of law, to one which arguably poses the issue of ambiguity as a question to be resolved by the jury. H–K correctly notes that the trial court had already ruled on whether the document was ambiguous when it determined to allow the admission of parol evidence at trial. Once that ruling was made, it was improper for the court to instruct the jury in such a way that would lead it to further deliberate the ambiguity of the instrument. The issue of ambiguity must be determined by the court as a threshold matter of law; the jury's role is limited to determining the intent of the parties based on the evidence presented at trial.

■ While it clearly is *not error to modi*fy an IDJI instruction and they are not mandatory, I.R.C.P. § 51(a)(2)[1], modification of an IDJI instruction does constitute error if the modified instruction does not conform to the state of the law, or omits elements basic to the case. *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976).

In this case, however, the error is harmless, and does not constitute a basis for a new trial. The modified instruction improperly suggested that the jury might it-self determine that the contract was ambiguous, but it did not purport to limit jury's inquiry once it made that determination. Instead, the jury was charged to determine what was intended by looking to the contract as a whole, the language used in the document, and the circumstances under which the document was made. It was instructed that "[t]he intent may also be gathered from any conduct or dealings of the contracting persons showing that they construed the doubtful language in the same sense." The jury instruction as a whole guided the jury to evidence beyond the four corners of the document, as was the appropriate scope of inquiry for the trier of fact once the judge had determined that the contract was ambiguous. Accordingly, we hold that the erroneous instruction did not amount to an error of the degree requiring the trial judge to grant H–K's motion for new trial.

■ H–K also challenges the district court's exclusion of evidence relating to Ranstrom's medical condition. H–K offered testimony from a lay witness concerning Ranstrom's involvement in a recent auto accident, offered to show lack of memory and lack of credibility in order to impeach Ranstrom's testimony concerning the circumstances of the agreement. H–K also offered evidence as to Ranstrom's allegedly dire financial condition near the time of the agreement, which H–K alleges would have been relevant to Ranstrom's bias and motives for distorting terms of the instrument for his own purposes.

We conclude that the trial court was within the bounds of its broad discretion in weighing the prejudice and probative value of proffered evidence and concluding that the evidence should be excluded. I.R.E. 403; *Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986).

■ Another issue brought before us on appeal is H–K's claim that the trial court

---

1. **Rule 51(a)(2). Use of Idaho Jury Instructions (IDJI).**—Whenever the latest edition of Idaho Jury Instructions (IDJI) contains an instruction applicable to a case and the trial judge determines that the jury should be instructed on the subject, it is recommended that the judge use the IDJI instruction unless he finds that a different instruction would more adequately, accurately or clearly state the law. * * *

erred in failing to make findings on the equitable issue of reformation. After trial, H–K requested the trial court to alter or amend the judgment pursuant to I.R.C.P. 59(e).

One of the grounds for the request was that the issue of the reformation of the contract was reserved to the court, and kept from the jury at the request of counsel for Ramco. H–K asserts that it was error for the court to fail to make a specific decision supported by findings of fact and conclusions of law, as required by I.R.C.P. 52(a). We agree.

Idaho Rule of Civil Procedure § 52(a) provides that, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of appropriate judgment; ..."

In the special verdict form, the jury was asked whether they found that the written agreement between Ramco and H–K should be reformed by the court to express the intent that the gain realized from the equipment sale to ADA should be deducted from Ramco's 24.26% share of the NOL. The jury indicated that it should not be reformed. The trial court, in its written judgment, restated that finding and ordered that the agreement should not be reformed.

Ramco argues that the court's conclusory statement in the judgment satisfies I.R.C.P. 52(a). Such a loose interpretation of the Rule would render the requirement of findings of fact and conclusions of law meaningless. Ramco further argues that a lack of required findings constitutes harmless error as long as the appellate court does not need to rely on such findings for an understanding of the issues and the basis of the trial court's decision, citing *Merrill v. Merrill*, 83 Idaho 306, 362 P.2d 887 (1961).

In *Merrill*, this Court held that I.R.C.P. 52(a)'s requirement of findings might be relaxed "where the record is so clear that the court does not need their aid for a complete understanding of the issues." *Id.*, 83 Idaho at 311, 362 P.2d 887. That

case, however, involved a divorce decree entered upon the default of one of the parties. That situation is a far cry from the facts of this case which involved a vigorous trial over a complex corporate transaction. Under the circumstances we cannot say that the issues are so clear as to obviate the need for the trial court's unique perspective of the evidence and elucidation upon the basis for its decision to deny reformation. Therefore, we remand the issue of reformation to the trial court for further findings consistent with this opinion.

The final matter to be resolved is the question of the award of costs and attorney fees. The trial court awarded costs as a matter of right to Ramco as the prevailing party in the amount of $4,305.96, and awarded discretionary costs totaling $7,818.23. It declined to award attorney fees to Ramco under I.C. § 12–120(3), citing *Myers v. Vermaas*, 114 Idaho 85, 753 P.2d 296 (Ct.App.1988). There are several separate issues raised on appeal.

H–K argues that the trial court erred in awarding all costs to Ramco in the apparent belief that to the overall winner of the larger judgment in a case involving competing claims go the spoils of all costs as a matter of right.

H–K also contests Ramco's assertion that it is entitled to a mandatory award of attorney fees under the 1986 amendment to I.C. § 12–120(3), which allows recovery of fees by the prevailing party in a case seeking recovery on a "commercial transaction." H–K asserts that Ramco's cause of action arose in 1985, and cites *Myers v. Vermaas*, 114 Idaho at 85, 753 P.2d 296, to support its argument that Ramco is not entitled to recover fees under that section because the 1986 amendment may not be retroactively applied. Thus, H–K argues that the only basis for an award of attorney fees to Ramco is a finding by the trial court that the case was brought or defended by H–K frivolously under I.C. § 12–121, and that the trial court made no such findings.

Conversely, H–K asserts that it is entitled to an award of attorney fees as the

prevailing party in its counterclaim based on the sale of gravel under I.C. § 12–120(3)'s pre–1986 provision allowing fees in a contract for the sale of goods.

■ As to the issue of costs, we agree with H–K's argument that the determination of which party has prevailed is not a matter of a mechanical measurement of the size of each party's respective recovery. Instead, the trial court should analyze each claim separately. Where both parties have successfully asserted claims, the claims should be severed and costs analyzed separately for each. I.R.C.P. 54(d)(1)(B). Thus, H–K was entitled to an award of costs as a matter of right for the costs surrounding its gravel counterclaim, while Ramco was entitled to costs surrounding the claim for recovery under the reorganization contract.

■ We also hold that the district court improperly denied Ramco attorney fees under I.C. § 12–120(3). Although the 1986 amendment is not subject to retroactive application, *Myers v. Vermaas*, the proper focus is upon the time of filing, not the time the cause of action arose. *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989). This action was filed on February 27, 1987. Therefore, the 1986 amendment to I.C. § 12–120 would be applicable to this case.

■ Ramco alleges that it is entitled to attorney fees on appeal on the ground that H–K's appeal was brought without any foundation in law or fact. We are not convinced that H–K had no reasonable basis to challenge the trial court's judgment. Accordingly, we deny attorney fees on appeal.

In conclusion, we uphold the trial court's denial of H–K's motion for judgment notwithstanding the verdict or new trial, but remand for further findings on the equitable issue of reformation and the award of costs and attorney fees. No costs on appeal.

BAKES, C.J., JOHNSON, J., and HURLBUTT, J., Pro Tem., concur.

BISTLINE, Justice, dissenting.

As an appellate court, we are charged with the task of reviewing all questions of law, unencumbered by what the court below determined. This free review of pure issues of law is an important function of all appellate courts, because our answers to questions of law set the tone for similar litigation in the future. Civil disputes over commercial contracts are not rare, and should therefore be handled with one eye on the future. The majority has failed to consider the future, and has instead confused a basic issue of contract law. This dissent sets out what, as a matter of law, is the consequence of applying the correct rule of law concerning the use of extrinsic evidence and prior agreements to construe a contract to the facts of this case.

Citing no authority, the majority proclaims that "[t]he issue of [contract] ambiguity must be determined by the court as a threshold matter of law; the jury's role is limited to determining the intent of the parties based on the evidence presented at trial." Maj. Op. at 111, 794 P.2d at 1384. As will be discussed, that proclamation is a correct statement of the law. However, the majority did not apply that proclamation to this case. The majority states that:

> H–K presented evidence of a prior draft of the agreement, which it argued had been independently agreed to in May, reducing only Ramco's share of the NOL. H–K presented evidence that the language of that draft was subsequently changed on the advice of Ranstrom's accountant, intentionally making it vague in order to avoid later tax problems, without intending a change in the actual terms of the agreement. Thus, it argues that the terms of the [July] document, being vague may be supplemented by other evidence of the intent of the parties.

Maj. Op. at 110, 794 P.2d at 1383. In other words, H–K argued that the latest agreement between the parties was vague because some vague language had been inserted, but that neither party intended to change the terms of the agreement. H–K was allowed to present extrinsic evidence at trial to the jury without first obtaining a ruling from the judge that the July agreement was indeed so vague that extrinsic

evidence was required in order for the agreement to be interpreted.

The majority notes that the judge punted the issue of contract ambiguity to the jury, while at the same time admitting evidence of at least one prior agreement entered into by the parties for distribution of the NOL. The majority determines that this error is "harmless" because the jury instructions "guided the jury to evidence beyond the four corners of the document, as was the appropriate scope of the inquiry for the trier of fact once the judge had determined that the contract was ambiguous." Maj. Op. at 111, 794 P.2d at 1384. What the majority does not tell you is that the judge never made this threshold determination! The judge simply allowed extrinsic evidence in during trial and placed on the jury's shoulders the determination of a question of law; *i.e.,* whether the July contract was ambiguous. If the trial court had in fact determined that the contract was ambiguous, then there would have been no need for the court to alter the words of the jury instruction.[2] *See* Maj. Op. at 111, 794 P.2d at 1384 (jury instruction that normally reads "[t]he Court has determined that the terms of the Agreement are unclear" was changed by the court to read that "[t]he Court has determined that the terms of the Agreement could be unclear").

The majority characterizes the error made by the court as simply one of instructing the jury. The majority is concerned that the jury instruction was altered. However, this error is neither harmless, as the majority insists, nor is it simply a question of incorrectly instructing the jury. A ruling by the judge, prior to the presentation to the trier of fact of extrinsic evidence that the contract was ambiguous, would have appropriately focused the at- tention of the trial court and trier of fact. If the contract was found by the trial court to be ambiguous, then the jury would understand that the extrinsic evidence was important to an understanding of the terms of the contract. If the judge ruled that the contract was not ambiguous, then no evidence of prior agreements or other extrinsic evidence would have properly been presented to the jury, and the jury would then focus upon the four corners of the document. Instead, the jury was incorrectly left to its own devices to determine for itself whether the contract was ambiguous, and to what extent.

Compounding error upon error, the majority remands "the issue of reformation to the trial court for further findings consistent with this opinion." Maj. Op. at 112, 794 P.2d at 1385. Reformation was the relief requested by H–K Contractors. H–K's request for this form of relief must rest on the notion of unilateral mistake, because Ramco insists that no mistake was made and that the July agreement represents the contract between the parties. The majority neither blesses the court below with a list of the elements that H–K must show to gain reformation on the ground of unilateral mistake, nor does the majority consider the impact of its remand. I will consider each in turn.

To gain reformation because of unilateral mistake, H–K has a difficult task before it. If equity readily allowed avoidance of an agreement and reformation in all such cases, there would be no stability in contracts. H–K must show, to avoid the consequences of the July agreement and to gain reformation, that the vagueness or mistake in the July agreement went to a basic assumption on which the contract was made. This mistake must have a ma-

---

**2.** I have been urged to consider this statement by the trial court as an affirmative ruling on contract ambiguity:

> With regard to the parol evidence, *I'm going to start out with the position* of allowing parol evidence. It's my determination that it's disputed evidence as to whether it's all there, whether it isn't. Under those circumstances, seems to me the parol evidence should be used by the jury, heard.

Transcript of Proceedings before District Judge May, June 7, 1988, p. 47 (emphasis added). This statement, in conjunction with the altered jury instruction, convinces me that the trial court did not shoulder the burden of determining as a matter of law whether the contract was ambiguous.

terial effect on the performance of the contract for each party. H–K must also show that the July agreement as it stands is unduly burdensome to it, but that Ramco has in no way relied on the agreement to its detriment. *See* Farnsworth, Contracts § 9.4 at 663 (1982).

Let us consider what may happen on remand. There are two possibilities of interest here. H–K may carry its burden and prove that it is entitled to reformation. In that case, the July agreement would be re-written, and the NOL would be distributed according to this reformed agreement. In effect, the jury's verdict would be pushed aside because the jury was improperly allowed to consider the July agreement before reformation. On the other hand, on remand H–K may not be able to carry the burden of proving up its entitlement to reformation. Therefore, the court would rule as a matter of law that the July agreement is *the* agreement, and evidence of other agreements would be inadmissible. No matter what happens on remand, the jury's verdict is undermined. For reasons I will now explain, the better approach dictates that this cause be re-tried, because the issue of contract ambiguity is a threshold matter of law, to be determined long before a jury is privy to evidence beyond the contract.

There are currently two views on the admittance of extrinsic evidence to assist in the interpretation of a contract. Both views nevertheless require a threshold showing that the contract cannot stand alone before extrinsic evidence will be admitted. The older more restrictive view states that evidence of prior negotiations may be used for the purpose of interpretation only if the language in the writing is unclear, in the sense of being ambiguous or vague. As Supreme Court Justice Holmes once wrote, parties must be prevented from showing "that when they wrote five hundred feet it should mean one hundred inches, or that Bunker Hill Monument should signify Old South Church." Holmes, The Theory of Legal Interpretation, 12 Harv.L.Rev. 417, 420 (1899).

The second and more liberal view, championed by Corbin and the Restatement Second, states that extrinsic evidence of prior negotiations is always admissible for the purposes of contract interpretation. But, as Farnsworth points out, "even under the liberal view, extrinsic evidence is admissible only where the *question* is one of ambiguity or vagueness." Farnsworth, Contracts § 7.12 at 503 (1982) (emphasis in original).

Accordingly, under either view the trial court should have made a threshold determination whether the July agreement was ambiguous. The process which the trial court should have followed to determine if the contract was ambiguous is straightforward. *See Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987 (S.D.N.Y.1968). The first step is to determine whether any of the material terms of the contract are ambiguous:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Eskimo Pie*, 284 F.Supp. at 994. This first step is generally determined upon a motion in limine,[3] because the step determines the admissibility of the bulk of the evidence in any contract dispute.

The second and final step concerns the issue of objective and subjective meaning:

> Unless the language is meaningless on its face (e.g. "abracadabra") or ambiguous, however, the test for admission of [extrinsic] evidence is not a secret code meaning given to it by the parties but whether it might objectively be recognized by a reasonably intelligent person acquainted with applicable customs, usages and the surrounding circumstances as having such a special meaning.

*Eskimo Pie*, 284 F.Supp. at 994. That is, during the hearing upon a motion in limine,

---

**3.** "In limine" means on or at the threshold; at the very beginning; preliminarily. A motion in limine may nevertheless be brought before or after the beginning of a jury trial.

or upon the court's request, a party may not simply rely upon its subjective interpretation of a contract term in order to prove that the term is ambiguous or vague. Instead, extrinsic evidence is placed before the trial court for it to determine whether the contract and its terms are subject to various and divergent but objective interpretations.

Needless to say, the procedure that has just been outlined never took place in this case. Instead, the trial judge improperly left the issue of ambiguity to the jury. The majority ignores the consequences of this and finds that the erroneous jury instruction stating that "[t]he Court has determined that the terms of the Agreement could be unclear" was at most a harmless error, but nevertheless remands the case so that the judge may determine whether the contract should be reformed. As noted above, the showing required by H–K for reformation basically amounts to a determination by the court, post trial, whether the contract standing alone is ambiguous.

So, while the correct principle was announced in one sentence (without supporting authority) by the majority, its application was not carried out. In the future, both trial courts and litigants before those courts should press for the disposition of all preliminary issues.