826 P.2d 1301

**L.D. FITZGERALD, Trustee in Bankruptcy, Plaintiff–Respondent–Cross Appellant,**

v.

**Lloyd J. WALKER, Individually and as Trustee-in-Trust for Lloyd J. Walker, P.A., Defendants–Appellants–Cross Respondents.**

No. 18052.

Supreme Court of Idaho,
Boise, December 1991 Term.

Feb. 25, 1992.

Cosho, Humphrey, Greener & Welsh, Boise, for plaintiff-respondent-cross appellant. Howard Humphrey, argued.

Lojek & Gabbert, Chartered, Boise, for defendants-appellants-cross respondents. Donald W. Lojek, argued.

ON REHEARING

1991 Opinion No. 4, filed January 11, 1991, is hereby withdrawn and this opinion is substituted therefor.

McDEVITT, Justice.

This is a legal malpractice action. The plaintiff alleged that the defendant was

negligent in his handling of certain legal claims. A jury returned a verdict in favor of the plaintiff. After post-trial motions, both plaintiff and defendant appeal. We affirm.

## FACTS

Bert and Jeannie Atkinson formed Riviera Meats, a limited partnership, in 1976. Bert Atkinson, representing Riviera Meats, entered into an agreement with Country Pride to sell and deliver Country Pride products wholesale within a certain territory.

In September of 1977, Atkinson decided that he was being overcharged by Country Pride. Meanwhile, the Atkinsons were losing business. The parties dispute the reason for the losses, but whatever the cause, the end result was that by the end of 1978 the Atkinsons owed Country Pride $81,000.00.

In 1979, Country Pride sued for the debt. The Atkinsons' attorney counterclaimed for breach of contract and overcharge. The attorney also saw the possibility of a counterclaim for antitrust violations, and referred the Atkinsons to the defendant Lloyd Walker, an attorney with experience in antitrust law.

The suit by Country Pride was settled, but the antitrust counterclaim based on price discrimination was not resolved. The Atkinsons claimed that Country Pride had violated the antitrust provisions contained in I.C. §§ 48–101, 48–102, and 48–202. During pretrial discovery, Walker failed to answer several interrogatories. Walker entered into a stipulation to further answer discovery or have the case dismissed. When Walker failed to provide further answers, Country Pride moved to dismiss the case. Walker submitted an affidavit arguing that his clients had a good claim, and promised to answer the interrogatories on the following day. However, the answers were not forthcoming, and the Atkinsons' antitrust claims were dismissed as a sanction for failure to comply with discovery. Walker prepared a motion for reconsideration and an affidavit (which he did not file with the court) in which he argued that it

was "necessary and desirable" to proceed with the trial. The Atkinsons claimed that Walker told them repeatedly that the case was being appealed when in fact it was not.

The Atkinsons filed a legal malpractice action against Walker, alleging as damages the amounts they would have recovered from the antitrust suit against Country Pride. The jury returned a verdict in favor of the Atkinsons for $173,164.00, and Walker made a motion for judgment notwithstanding the verdict or new trial. The trial court denied the motion. The trial court also denied the Atkinsons' request for attorney fees.

Walker appeals the denial of these motions and the Atkinsons, through their trustee in bankruptcy, L.D. Fitzgerald, cross-appeal the trial court's failure to instruct the jury on punitive damages and the failure to award attorney fees to them as the prevailing party.

## I.

## JUDGMENT NOTWITHSTANDING THE VERDICT AND MOTION FOR NEW TRIAL

■ The defendant appeals from the trial court's denial of the motion for directed verdict and the denial of the motion for judgment notwithstanding the verdict. The defendant alleges that the evidence was "insufficient as a matter of law" to support the jury's verdict. Our standard of review in analyzing a motion for directed verdict or a motion for judgment notwithstanding the verdict (JNOV) is the same as the standard used by the trial court in passing upon the original motion. Therefore, we review the record and draw all inferences in favor of the non-moving party to determine if there is substantial evidence to support the verdict. *Marias v. Marano*, 120 Idaho 11, 813 P.2d 350 (1991); *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). We do not weigh the evidence or pass on the credibility of witnesses, nor do we make our own independent findings to compare to the jury's findings. Rather, we only determine whether there was sub-

stantial evidence upon which to base the verdict. *Id.*

The jury was submitted a general verdict form consisting of three questions. The jury's verdict is as follows:

QUESTION NO. 1: Was the Defendant Lloyd J. Walker negligent in his performance of professional services in the Country Pride case?

ANSWER: YES_X_ NO___

If you answered "No" to Question No. 1, then simply sign the verdict form and inform the bailiff that you are done. If you answered "Yes" to Question No. 1, then proceed to answer Question No. 2.

QUESTION NO. 2: Was the negligence of Lloyd Walker a proximate cause of damages to the Atkinsons, d/b/a Riviera Meats?

ANSWER: YES_X_ NO___

If you answered "No" to Question No. 2, then simply sign the verdict form and inform the bailiff that you are done. If you answered "Yes" to Question No. 2, then proceed to answer Question No. 3.

QUESTION NO. 3: What is the total amount of damage sustained by the Atkinsons as a result of the conduct of Lloyd Walker?

ANSWER: $173,164.00

■ We note that on appeal, we will construe the evidence in the record most favorably to the party prevailing below. *Parker v. Engle*, 115 Idaho 860, 771 P.2d 524 (1989). Because of the general verdict form, we cannot determine upon which theory or theories of antitrust violations the jury found. Therefore, we will uphold the jury verdict if there is any theory upon which it can be based.

■ The Atkinson's testified extensively concerning their business and its relationship with Country Pride. They testified as to the actions taken by Country Pride that they contended evidenced their claims of violations of the antitrust statutes, and the alleged detrimental effect this had upon their business.

In addition, the plaintiff produced hundreds of invoices showing the prices charged by Country Pride to Riviera. The plaintiff also produced hundreds of invoices from the same time period showing the prices charged to Riviera's competitors. While the parties disputed the interpretation of these invoices, the invoices were properly before the trier of fact to consider.

The plaintiff's expert witness, Mr. A.L. Lyons, testified that Country Pride violated the antitrust statutes. Specifically, Mr. Lyons testified:

Q. BY MR. LOJEK: Mr. Lyons, based on your education, experience and information concerning the Amended Counterclaim filed by Mr. Walker against Country Pride, do you have an opinion as to whether Country Pride violated one or more of the sections of the Antitrust Law as stated in the Amended Counterclaim?

A. Well, yes, I have an opinion.

Q. And what is your opinion in that regard?

A. My opinion is that, at least to the tune of $100,000, there was predatory conduct on the part of Country Pride which would fall under all three of those sections. Taking them in reverse, the Little Robinson–Patman Act [I.C. § 48–202] and that the anti-price discrimination—antipredatory price discrimination. Then 48–102 the attempt to monopolize, which paints with a very broad brush, covers a host of sins, almost any anticompetitive activity, including the Little Robinson–Patman Act. And 48–101 is where there's a combination or conspiracy, and there has been some indication that that might have occurred between Country Pride and the Golden Rule [a competitor of Riviera], who, when Golden Rule was acting as a distributor....

This testimony was introduced without objection, therefore, it was properly before the trier of fact. *Mager v. Garrett Freightlines*, 100 Idaho 469, 600 P.2d 773 (1979); *Hamby v. Simplot Co.*, 94 Idaho 794, 498 P.2d 1267 (1972). We conclude that there was substantial, albeit conflicting, evidence to support the verdict. We hold the district court did not err in denying the defendant's motion.

Our standard of review in passing upon a motion for new trial is different from a motion for judgment notwithstanding the verdict. In passing upon a motion for a new trial, the trial court has broad discretion. The trial court weighs the evidence and passes upon the credibility of the witnesses. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). The trial judge may then grant a new trial when it appears that the verdict is not supported by or is contrary to the evidence, or the verdict is not in accord with either the law or justice. *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967). Thus, we review the decision of the trial court to see if it abused its discretion. *Chenery v. Agri–Lines*, 115 Idaho 281, 766 P.2d 751 (1988).

In denying the motion for new trial, the trial court reviewed the jury's verdict and compared it to the evidence. The trial court then determined that the jury's verdict was in conformity with the evidence and denied the motion. Our review of the trial court's decision shows that the trial court acted well within the bounds of its discretion. We affirm the trial court's denial of the motion for new trial.

## II.

## PUNITIVE DAMAGES

The plaintiff filed a cross-appeal, claiming that the trial judge erred in refusing to instruct the jury on punitive damages.

The decision of whether to instruct on punitive damages is within the discretion of the trial judge. *Soria v. Sierra Pac. Airlines*, 111 Idaho 594, 726 P.2d 706 (1986). Punitive damages are not favored, and the circumstances where they are appropriate are limited. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Jolley v. Puregro*, 94 Idaho 702, 496 P.2d 939 (1972). We cannot say that the trial judge abused his discretion as a matter of law in declining to instruct the jury on the possibility of awarding punitive damages in this case.

The result we reach today is in harmony with our previous holdings. In *Gar-*

*nett v. Transamerica Ins. Servs.*, 118 Idaho 769, 800 P.2d 656 (1990), we applied the abuse of discretion test as enunciated in *Cheney* to uphold the trial court's decision to instruct the jury on punitive damages. An abuse of discretion will be found only when there is not substantial evidence to support the trial court's decision. *Garnett v. Transamerica Ins. Servs.*, 118 Idaho at 781, 800 P.2d at 668; *Edmark v. Twin Cities Toyota*, 111 Idaho 846, 727 P.2d 1274 (Ct.App.1986), *review denied*. As long as there is sufficient evidence to support its decision, we will give deference to the trial court's decision. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho at 905, 665 P.2d at 669.

We employ this same test in the present case. Therefore, we must review the record to determine if there was sufficient evidence to support the decision of the trial court. It may appear that Walker's conduct, including alleged misrepresentations to his clients and failing to fulfill discovery obligations at the price of his clients' cause, is a sufficiently "extreme deviation from reasonable standards of conduct" to warrant punitive damages instructions. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho at 905, 665 P.2d at 669. However, it is not for this Court to make that determination where the trial judge, absent an abuse of discretion, has not seen fit to instruct on the issue. Courts have much greater latitude where the decision is not to instruct on the issue, in light of the law's natural tendency to disfavor punitive damages. In this case, we cannot say that the failure to instruct on punitive damages is so contrary to the facts of the case as to amount to an abuse of discretion under that deferential standard.

## III.

## ATTORNEY FEES

Respondents also claim an entitlement to attorney fees pursuant to I.C. § 48–114, which provides for an award of attorney fees upon proof of a violation of I.C. §§ 48–101 and 48–102, and § 48–204(a), which authorizes an award of attorney fees

in a case proving a violation of the antitrust provisions of I.C. § 48–202.

The peculiar nature of a legal malpractice action requires the action to proceed as a suit within a suit. Therefore, an award of attorney fees pursuant to the underlying antitrust action constitutes a part of the measure of damages in the malpractice case, and must be submitted as part of the proof of damages under the antitrust claim. It is not sufficient to file a post-trial affidavit of costs and fees under I.R.C.P. 54(d). The trial court did not err in denying the motion for attorney fees.

## CONCLUSION

We affirm the denial of the motions for directed verdict, judgment notwithstanding the verdict and a new trial. As to the cross-appeal, we affirm the trial court's decision not to instruct the jury on punitive damages and denial of the motion for attorney fees.

No costs.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.