82 P.3d 450

**Mark S. ROCKEFELLER, dba Rockefeller & Associates, Plaintiff–Respondent,**

v.

**John C. GRABOW and Laura M. Grabow, Defendants–Appellants.**

No. 29031.

Supreme Court of Idaho, Pocatello, September 2003 Term.

Dec. 9, 2003.

John C. Grabow, Ketchum, for appellants. John C. Grabow argued.

Thomsen & Stephens, P.A., Idaho Falls, for respondents. James D. Holman argued.

EISMANN, Justice.

This is an appeal after the case was remanded for the district court to determine whether a real estate developer-broker who breached his fiduciary duties to his principal should forfeit all or a portion of the development fee that the developer-broker earned before the breach. The district court awarded the developer-broker 87.5% of his development fee and attorney fees, and the landowners appealed. We affirm the award of the development fee and the award of attorney fees.

## I. FACTS AND PROCEDURAL HISTORY

In January 1992, the appellants John and Laura Grabow and the respondent Mark Rockefeller entered into a written agreement entitled "Property Development and Agency Agreement" (Agreement). Under the Agreement, Rockefeller agreed to develop and subdivide certain real property owned by the Grabows and they appointed Rockefeller as their exclusive selling agent for a period of eight years. The development was to be known as the Shooting Star Ranch. Rockefeller was to be paid a development fee equal to two percent of the price obtained from the sale of any or all of the property and a sales commission that was a percentage of the selling price. The development commission was to be paid even if the contract was terminated. The sales commission was six percent if Rockefeller found the buyer and three percent if another brokerage firm found the buyer, with that firm also receiving a four percent commission. Rockefeller agreed to use his best efforts to subdivide and develop the property and to market and sell the subdivided parcels. If the Grabows determined in good faith that Rockefeller had breached the Agreement, they could give him written notice of their intent to terminate the Agreement, and he would have ten days to cure.

By letter dated November 8, 1993, the Grabows gave Rockefeller notice that he had breached the Agreement. The breaches listed in the letter were his failure to prepare a written Winter marketing plan, his failure to provide a monthly activity log listing the showings of the property to prospective purchasers, and his failure to list the property in

the Jackson Hole multiple listing service. Rockefeller responded by a letter dated November 17, 1993, in which he asserted he had not breached the contract but did agree to comply with Grabows' requests.

On September 12, 1994, the Grabows sent Rockefeller a letter notifying him that they were terminating the Agreement in sixty days. They alleged that he was not using his best efforts to market the lots and had not provided them with monthly activity logs. They also claimed that Rockefeller breached the Agreement by taking a listing on adjoining real property owned by Jerry Linn, who claimed an easement across lot 44 of the Shooting Star Ranch. The Grabows contended that when they purchased their property Rockefeller, as agent for their seller, told them that Linn's easement was for logging only, but after taking the listing on Linn's property Rockefeller claimed he had merely said that Linn had only used the road for logging in the past. In their September 12, 1994 letter, the Grabows stated that Rockefeller had not complied with their request to put in writing the representations he had made to them about the scope of Linn's easement and that, as their agent, such refusal was untenable.

On June 16, 1995, Rockefeller sued the Grabows seeking his development fee and sales commissions, damages for defamation, and reinstatement as the Grabows' sales agent. The Grabows counterclaimed for breach of contract, breach of fiduciary duties, fraud, and tortious interference with prospective economic advantage. The Grabows moved to dismiss Rockefeller's claim for reinstatement as their sales agent, and on January 16, 1996, the district court entered a partial judgment dismissing that claim. Both parties filed motions for summary judgment. Rockefeller's motion for summary judgment was heard on April 30, 1996. On May 15, 1996, the district court entered an order for partial summary judgment holding that Rockefeller was entitled to the two percent development fee and dismissing the Grabows' counterclaim for tortious interference with prospective economic advantage. On May 24, 1996, the district court heard Grabows' motion for summary judgment.

On June 14, 1996, the district court entered an order for partial summary judgment dismissing Rockefeller's claim for defamation. The district court denied the remaining parts of the parties' motions for summary judgment.

The remaining issues, other than the amount of Rockefeller's development fee, were tried to a jury in February 1996. The jury returned a special verdict finding that the Grabows did not breach the Agreement by wrongfully terminating Rockefeller and that Rockefeller breached his fiduciary duty to the Grabows. The jury awarded the Grabows $18,250 in damages and $36,500 in punitive damages. On March 12, 1997, the district court entered judgment in favor of Grabows in the sum of $54,750.

Rockefeller then filed a motion seeking a new trial or, alternatively, a judgment n.o.v. or remittitur, and a judgment for his two percent commission together with costs and attorney fees. In response, the Grabows moved for disgorgement of Rockefeller's development fee because of the breach of his fiduciary duty and for an award of costs and attorney fees. By order entered August 14, 1997, the district court denied the request to alter the jury verdict and held that Rockefeller was entitled to his development commission. On September 10, 1997, the district court entered an amended judgment, which provided that Rockefeller was entitled to recover $60,191 in development commissions and the Grabows were entitled to recover $54,750 on the jury verdict, for a net judgment in favor of Rockefeller in the sum of $5,441, plus interest from February 14, 1997.

On February 23, 1998, the district court entered an order regarding the parties' requests for attorney fees and costs. The court held that Rockefeller prevailed on his claim for the development commission, that such claim was a commercial transaction for which he was entitled to an award of attorney fees under Idaho Code § 12–120(3) and court costs, that the Grabows prevailed on their counterclaim for breach of fiduciary duty, that they were not entitled to an award of attorney fees on their counterclaim because the gravamen of the claim was a tort action, and that they were entitled to court

costs on their counterclaim. After each party submitted a memorandum of costs, the court awarded Rockefeller a reasonable attorney fee in the sum of $8,500 plus court costs in the sum of $9,440.95, and it awarded the Grabows court costs in the sum of $2,336.69.

The Grabows appealed and Rockefeller cross-appealed. The opinion on that appeal is *Rockefeller v. Grabow*, 136 Idaho 637, 39 P.3d 577 (2001) (herein *Rockefeller I* ). On appeal, we affirmed the district court with respect to all issues raised on appeal except the order granting Rockefeller a judgment for the amount of his development commissions. We remanded the case for a determination by the district court of whether Rockefeller should forfeit all or a portion of his development commission due to his breach of his fiduciary duties. Because we reversed the award to Rockefeller of his development commission, we also vacated his award of attorney fees.

On remand, the district court reduced Rockefeller's development commission by 12.5% to $52,667.13. Because Rockefeller was still awarded damages for his development fee, the district court also reinstated its original award of court costs and attorney fees. The Grabows then appealed.

## II. ISSUES ON APPEAL

A. Did the district court fail to comply with this Court's order on remand?

B. Did the district court abuse its discretion when determining the amount of Rockefeller's development commission that he should forfeit?

C. Did the district court err in awarding Rockefeller attorney fees on remand?

D. Is Rockefeller entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the District Court Fail to Comply with This Court's Order on Remand?

Grabow alleged that Rockefeller committed several breaches of his fiduciary duties, which we described in *Rockefeller I* as follows:

The evidence submitted at trial could lead a jury to conclude that while Rockefeller was the Grabows' agent, he misrepresented to them the commission typical to the marketplace; took on the representation of a piece of property, the sale of which eventually depended upon winning a lawsuit against the Grabows; helped set up a means whereby Linn could afford to sue the Grabows; and shared information about the Grabows' bargaining position with Staten and Linn while keeping all information from Linn and Staten confidential.

136 Idaho at 647, 39 P.3d at 587. When we remanded the case to the district court for determination of the amount of the forfeiture of Rockefeller's development fee, we directed the district court to consider factors, including "the ... timing of the violation" and "whether the agent completed a divisible portion of his contract duties before the breach occurred for which compensation can be determined." 136 Idaho at 643, 39 P.3d at 583. Those factors are significant in this case because the alleged breaches occurred at different times.

The Agreement between Rockefeller and the Grabows had two divisible portions: the subdividing and development of the project for which Rockefeller was to be paid a development fee and the marketing and sales of the lots for which Rockefeller was to be paid a sales commission. The first alleged breach occurred before the Agreement was executed. The Grabows alleged that during the negotiations leading to the Agreement, Rockefeller, who was at the time already their agent, misrepresented that the sales commission typical in the marketplace was eight percent. The remaining alleged breaches occurred after Rockefeller had substantially completed the subdividing and development portion of the Agreement. If Rockefeller had committed the first alleged breach, it would have been before he had completed a divisible portion of his contract duties. If he had not, the breach would have been after he had substantially completed a divisible portion of his contract duties.

On remand, the district court found that Rockefeller's statement regarding the typical sales commission in the marketplace was not a misrepresentation, and therefore the breach of fiduciary duty occurred after Rockefeller had substantially completed the subdividing and development portion of the Agreement. The Grabows contend that such finding violates the directive of our remand order and is barred by the law-of-the-case doctrine. They argue that, as a matter of law, the first breach should have been found to have occurred at the inception of the Agreement.

■ When this Court, in deciding a case upon appeal, states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the district court and upon subsequent appeal. *Dachlet v. State*, 136 Idaho 752, 40 P.3d 110 (2002). The law-of-the-case doctrine also prevents consideration on a subsequent appeal of alleged errors that might have been, but were not, raised in the earlier appeal, *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 992 P.2d 751 (1999), and the challenging of factual findings that were affirmed in the earlier appeal, *Insurance Assoc. Corp. v. Hansen*, 116 Idaho 948, 782 P.2d 1230 (1989).

■ One of the issues raised in *Rockefeller I* was whether the district court erred in submitting the issue of punitive damages to the jury. When addressing whether there was substantial evidence to submit that issue to the jury, we stated:

> The evidence submitted at trial could lead a jury to conclude that while Rockefeller was the Grabows' agent, he misrepresented to them the commission typical to the marketplace; took on the representation of a piece of property, the sale of which eventually depended upon winning a lawsuit against the Grabows; helped set up a means whereby Linn could afford to sue the Grabows; and shared information about the Grabows' bargaining position with Staten and Linn while keeping all information from Linn and Staten confidential. The evidence supporting these possible conclusions constitutes sufficient

evidence from which a jury could decide Rockefeller purposefully favored Linn over the Grabows in order to earn a commission on the sale between Linn and Staten. The district judge properly submitted the issue of punitive damages to the jury.

136 Idaho at 647, 39 P.3d at 587. We stated that the evidence "could lead a jury to conclude" that Rockefeller had violated his fiduciary duty in the ways alleged. We did not state that the jury had concluded that Rockefeller had violated his fiduciary duty in all of the ways alleged by the Grabows.

■ In this case, the jury rendered a general verdict, answering "yes" to the question, "Did Rockefeller breach his fiduciary duty to the Grabows?" The jury was not asked to determine whether Rockefeller had breached his fiduciary duty in each or all of the ways alleged by the Grabows. "The verdict being general, it is impossible to determine the basis on which the jury arrived at it." *Brown v. Hardin*, 31 Idaho 112, 116, 169 P. 293, 295 (1917). A general verdict is not a determination that all of the claims or theories upon which it could be based have been proven. It is merely a determination that at least one of such claims or theories has been proven. Therefore, we will uphold a general jury verdict if there is any theory upon which it can be based. *Fitzgerald v. Walker*, 121 Idaho 589, 826 P.2d 1301 (1992). Thus, although we noted that "a jury has now determined Rockefeller violated his fiduciary duties," 136 Idaho 648, 39 P.3d 588, we did not hold that his violation of his fiduciary duties included misrepresenting the sales commission typical in the marketplace.

We remanded the issue of Rockefeller's development fee to the district court "for a determination of whether Rockefeller should forfeit all, or just a portion, of his commission." *Id.* To do so, the district court was required to consider factors including the timing of the breach and whether Rockefeller had completed a divisible portion of his contract duties before the breach occurred. Because the general jury verdict was not a determination of the particular manner in which Rockefeller had breached his fiduciary duties, the district court could not properly consider these factors without first determin-

ing whether Rockefeller breached his fiduciary duties when he stated that the typical sales commission in the marketplace was eight percent. When doing so, the district court complied with this Court's order on remand.

## B. Did the District Court Abuse Its Discretion when Determining the Amount of Rockefeller's Development Commission that He Should Forfeit?

■ The determination of whether Rockefeller should forfeit all or just a portion of his development fee was within the district court's discretion. *Rockefeller I*. When reviewing a trial court's exercise of discretion, this Court inquires: (1) whether the trial court rightly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the trial court reached its decision by an exercise of reason. *Gustaves v. Gustaves*, 138 Idaho 64, 57 P.3d 775 (2002).

The Grabows argue that the district court abused its discretion by disregarding three of the factors we listed in *Rockefeller I*, which are the seriousness of the violation, the willfulness of the breach, and the potential for, or actual harm to, the principal. The district court expressly considered those factors in its decision. It simply gave more weight to other factors. The weight to be given the various factors was within the discretion of the district court.

■ The Grabows also argue that the district court abused its discretion because Rockefeller had only substantially completed, not fully completed, his development duties. In *Rockefeller I*, we stated that one factor to consider was "whether the agent completed a divisible portion of his contract duties before the breach occurred for which compensation can be determined." 136 Idaho at 643, 39 P.3d at 583. The district court found that Rockefeller first breached his fiduciary duties on June 22, 1994, when he drafted an offer by Linn and Ed Staten to purchase property from Jerry Linn and included in that offer a provision making the offer contingent upon Linn obtaining an easement across the Grabows' property, either by grant or by litigation. The district court also found that the subdivision was between 85% and 90% complete on June 22, 1994. The Grabows argue that because the subdivision was not 100% complete, Rockefeller had not completed a divisible portion of his contract duties at the time of the breach.

As we stated in *Rockefeller I*, "After considering the circumstances of the case, it is within the equitable jurisdiction of the trial judge to adjust the amount of forfeiture." 136 Idaho at 643, 39 P.3d at 583. We also noted, "Grabows were aware of some of the breaches early in the development process, yet did not terminate the agreement until Rockefeller had substantially completed his development duties." 136 Idaho at 642, 39 P.3d at 582. In exercising its equitable jurisdiction, the district court did not abuse its discretion in determining that because the subdivision was 85% to 90% complete before Rockefeller breached his fiduciary duties, he should recover 87.5% of his development fee.

■ Finally, the Grabows contend that the district court abused its discretion in calculating the amount of Rockefeller's development fee. The development fee was two percent of the price obtained upon the sale of any or all of the subdivided property. The Grabows argue that the district court failed to deduct from that two-percent fee the expenses that Rockefeller would have incurred in selling the parcels in the subdivision. The development fee, however, was separate and distinct from the commissions that Rockefeller could earn from lot sales. As the Agreement itself provided, "The right of Rockefeller to receive the two percent (2%) development fee shall survive the termination of this Agreement and shall inure to the benefit of his heirs." Rockefeller did not have to use his efforts to sell parcels in the subdivision in order to earn his development fee. He earned the development fee by subdividing and developing the property. The Grabows have failed to show that the district court abused its discretion in determining the amount of Rockefeller's development fee.

## C. Did the District Court Err in Awarding Rockefeller Attorney Fees on Remand?

Prior to the first appeal, the district court determined that both parties prevailed in part. Rockefeller prevailed on his claim for his development fee and the Grabows prevailed on their counterclaim for Rockefeller's breach of his fiduciary duties. It determined that Rockefeller was entitled to an award of attorney fees for prevailing on his claim for his development fee because the Agreement was a commercial transaction under Idaho Code § 12–120(3), but the Grabows were not entitled to an award of attorney fees on their counterclaim because the gravamen of that claim was a tort. The district court awarded Rockefeller $8,500 in attorney fees.

■ In *Rockefeller I*, because we reversed the grant of summary judgment on the issue of Rockefeller's development fee, we also vacated the award of attorney fees to him. After awarding Rockefeller 87.5% of his development fee on remand, the district court also reinstated its prior award of attorney fees. The Grabows first contend that the issue of attorney fees was not remanded to the district court and it therefore did not have jurisdiction to make that award.

In *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 130 Idaho 255, 939 P.2d 574 (1997), this Court addressed the issue of whether, when a judgment is reversed in part, the trial court has jurisdiction to award attorney fees on remand even though that issue is not expressly included in the issues to be addressed on remand. In that case, the defendant appealed jury verdicts against it on two counts of the complaint. We reversed the verdicts and remanded the case without mentioning whether the district court could, on remand, award the defendant court costs and attorney fees in defending against those counts. On remand, the defendant requested an award of court costs and attorney fees as the prevailing party on those two counts, but the trial court held that it did not have jurisdiction to consider that issue. The defendant then appealed, and we held that when we reversed the jury verdicts on the two counts, relieving the defendant of liability on those claims, "the question of attorney fees was a 'subsidiary issue fairly comprised therein.' On remand the district court had the jurisdiction to consider whether Chemetics [the defendant] was the prevailing party and to make an award of costs and attorney fees." 130 Idaho at 258, 939 P.2d at 577. Likewise, in this case, when we reversed the grant of summary judgment to Rockefeller on the issue of his development fee and remanded the issue for a determination of whether he should forfeit all, or just a portion, of his fee, the question of attorney fees was a subsidiary issue fairly comprised therein. The district court had jurisdiction to award attorney fees on remand.

■ The Grabows next contend that the district court abused its discretion in finding that Rockefeller was a prevailing party entitled to the award of attorney fees. The determination of who is the prevailing party in a lawsuit is committed to the sound discretion of the trial court, and its determination will not be disturbed absent an abuse of that discretion. *Bolger v. Lance*, 137 Idaho 792, 53 P.3d 1211 (2002). In making a determination of whether a trial court abused its discretion, this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Polk v. Larrabee*, 135 Idaho 303, 17 P.3d 247 (2000).

In this case, Rockefeller prevailed on his claim for development fee and the Grabows prevailed on their counterclaim for breach of fiduciary duties. In *Ramco v. H–K Contractors, Inc.*, 118 Idaho 108, 794 P.2d 1381 (1990), we addressed the issue of how court costs and attorney fees were to be addressed when the plaintiff prevails on the complaint and the defendant prevails on a counterclaim. In *Ramco*, the plaintiff obtained a jury verdict in its favor in the sum of $310,202, and the defendant obtained "some relief" on its counterclaim. The district court awarded the plaintiff court costs and attorney fees as the prevailing party. On appeal, the defendant contended that it was entitled to an

award of attorney fees on its counterclaim, and this Court agreed, stating as follows:

> As to the issue of costs, we agree with H–K's argument that the determination of which party has prevailed is not a matter of a mechanical measurement of the size of each party's respective recovery. Instead, the trial court should analyze each claim separately. Where both parties have successfully asserted claims, the claims should be severed and costs analyzed separately for each. I.R.C.P. 54(d)(1)(B). Thus, H–K was entitled to an award of costs as a matter of right for the costs surrounding its gravel counterclaim, while Ramco was entitled to costs surrounding the claim for recovery under the reorganization contract.

118 Idaho at 113, 794 P.2d at 1386.

■ In this case, as directed in *Ramco*, the district court determined that Rockefeller prevailed on his complaint and the Grabows prevailed on their counterclaim. It then analyzed their claims for court costs and attorney fees separately. Because the Agreement upon which Rockefeller recovered in his complaint was a commercial transaction, the district court awarded him attorney fees on that claim pursuant to Idaho Code § 12–120(3). Because the Grabows counterclaim was a tort action for which there is no statute permitting the awarding of attorney fees, the district court did not award them attorney fees. The Grabows do not challenge on appeal the district court's determination that Rockefeller's cause of action for his development fee was a commercial transaction under Idaho Code § 12–120(3) and that their counterclaim was not. The district court did not abuse its discretion in determining that Rockefeller was the prevailing party on his complaint and was therefore entitled to an award of a reasonable attorney fee.[1]

### D. Is Rockefeller Entitled to an Award of Attorney Fees on Appeal?

■ Rockefeller seeks attorney fees on appeal pursuant to Idaho Code § 12–120(3), which provides: "In any civil action to recover ... in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." The statute defines the term "commercial transaction" to mean "all transactions except transactions for personal or household purposes." IDAHO CODE § 12–120(3) (1998). Rockefeller's claim for his development fee was an action to recover in a commercial transaction. As the prevailing party on the appeal, he is entitled to an award of a reasonable attorney fee under Idaho Code § 12–120(3).

## IV. CONCLUSION

We affirm the judgment of the district court and award costs on appeal, including a reasonable attorney fee, to the respondent.

Chief Justice TROUT, and Justices KIDWELL and BURDICK concur.

Justice SCHROEDER dissenting.

I respectfully dissent from the Court's decision in parts III C and D of the opinion. Precedent should be followed when there is reliance on it and it leads to rational results. When it is neither relied upon nor leads to rational results, modification is in order. Following precedent the Court has parsed this case and determined that a litigant who breached his fiduciary duty and has had a punitive damage award entered against him can recover attorney fees because the part of his case upon which he prevailed was a commercial transaction under Idaho Code section 12–120(3). On the other hand the parties

---

1. In similar circumstances, we have also upheld the trial court's exercise of discretion in holding that there was no overall prevailing party and therefore neither party was entitled to an award of court costs and attorney fees. *Adams v. Krueger*, 124 Idaho 74, 856 P.2d 864 (1993) (where plaintiff prevailed on negligence claim and defendant prevailed on affirmative defense to extent of establishing that plaintiff was 49% contributorily negligent, trial court did not abuse discretion in finding that there was no prevailing party); *International Eng'g Co., Inc. v. Daum Indus., Inc.,* 102 Idaho 363, 630 P.2d 155 (1981) (where plaintiff prevailed on some claims and defendant prevailed on a counterclaim, the trial court did not abuse its discretion in holding that there was no prevailing party).

who prevailed on their counterclaim may not recover attorney fees "because the gravamen of that claim was a tort." The wrong of a fiduciary breach leading to a punitive damage award has been compounded to a degree that the Court should reexamine the authority that leads to this result. All claims, commercial and tort, in this case arose out of a course of dealings on the same development. The facts involving the complaint and the counterclaim are in reality inseparable. The Court should examine the case in that light and determine either that there was no prevailing party or that the Grabows prevailed. The person who breached his fiduciary duty and had a punitive damage award should not recover attorney fees.

This Court has the discretion to examine its prior authority and modify it to reach a just result when the modification will not undercut an interpretation that has been relied upon. It is doubtful fiduciaries have developed an expectation that they can violate their duties to the degree shown in this case and still obtain attorney fees when the principal prevails on that claim. The district court should be relieved of the responsibility of entering an order with the unjust consequences apparent in this case. This Court should relieve itself of the burden of an unjust result and deny the breaching fiduciary fees.