101 P.3d 690

KEB ENTERPRISES, L.P., a Utah limited partnership, Plaintiff–Respondent,

v.

Dale T. SMEDLEY and Helen B. Smedley, husband and wife; Wolfley Brothers, a partnership consisting of Kim M. Wolfley, De Loy E. Wolfley and Monty D. Wolfley; Kim M. Wolfley and La Rue Wolfley, husband and wife; De Loy E. Wolfley and Maria Wolfley, husband and wife; and Monty D. Wolfley and La Tawn Wolfley, husband and wife; Edwin M. Higley; Carl Symons White and Janet Grace Balice; and Clenden T. Bybee, Defendants–Respondents–Cross Respondents,

and

Steven Carl Schrader and Diane Marie Schrader; Walter G. Haag; Richard Barton and Amy Barton, husband and wife; Kevin Jay Keller and Mary Jo Keller, husband and wife; Barton Family Trust, Defendants–Respondents–Cross Appellants,

and

Lynn A. Jenkins, I., Counter–Cross Claimant–Appellant–Cross Respondent,

v.

KEB Enterprises, L.P., Counter defendant-Respondent,

and

Dale T. Smedley and Helen B. Smedley, husband and wife; Wolfley Brothers, a partnership consisting of Kim M. Wolfley, De Loy E. Wolfley and Monty D. Wolfley; Kim M. Wolfley and La Rue Wolfley, husband and wife; and Monty D. Wolfley and La Tawn Wolfley, husband and wife; Carl Symons White and Janet Grace Balice; and Clenden T. Bybee, Cross Defendants–Respondents–Cross Respondents,

and

Steven Carl Schrader and Diane Marie Schrader; Walter G. Haag; Richard Barton and Amy Barton, husband and wife; Kevin Jay Keller and Mary Jo Keller, husband and wife; Barton Family Trust, Cross Defendants–Respondents–Cross Appellants,

and

Steven Carl Schrader and Diane Marie Schrader, husband and wife; Walter G. Haag, Cross Claimants–Respondents–Cross Appellants,

and

Smedley Family Inv. Co.; Edwin M. Higley, Cross Defendants–Respondents–Cross Respondents,

and

Lynn A. Jenkins I, Cross Defendant–Appellant–Cross Respondent.

Mary S. Jensen, formerly known as Mary S. Barton, acting not individually but as Trustee of the Barton Family Trust created under Trust Agreement executed by Mary Barton on January 10, 1991, and executed by Walter E. Barton on May 31, 1988, Plaintiff–Respondent–Cross Appellant,

v.

KEB Enterprises, L.P., a Utah limited partnership; Edwin M. Higley, Defendants–Respondents,

and

Dale T. Smedley and Helen B. Smedley, husband and wife, and Smedley Family Inv. Co., a partnership, Defendants–Counterclaimants–Respondents–Cross Respondents,

and

Lynn A. Jenkins I, Defendant–Counterclaimant–Appellant–Cross Respondent.

Dale T. Smedley and Helen B. Smedley, husband and wife; and the Smedley Family Investment Co., a partnership, Cross Claimants–Respondents–Cross Respondents,

v.

Edwin M. Higley, Cross Defendant–Respondent–Cross Respondent.

No. 28780.

Supreme Court of Idaho,
Idaho Falls, September 2004 Term.

Sept. 30, 2004.

Review Denied April 6, 2005.

Lynn A. Jenkins I, Bountiful City, Utah, appellant/cross-respondent pro se.

Holden, Kidwell, Hahn & Crapo, P.L.L.C., Idaho Falls, for respondents/cross-appellants Steve and Diane Schrader, Walter Haag, Richard and Amy Barton, Kevin and Mary Jo Keller, the Barton Family Trust, and Mary Jensen. Charles A. Homer argued.

Anderson Nelson Hall Smith, P.A., Idaho Falls, for respondent KEB Enterprises, L.P. Douglas R. Nelson argued.

EISMANN, Justice.

This is an appeal from a judgment foreclosing a real estate mortgage and quieting title to a portion of the property subject to the mortgage. Several of the parties also cross-appeal the denial of their request for an award of attorney fees. We affirm the district court.

## I. FACTS AND PROCEDURAL HISTORY

On August 12, 1997, the respondent KEB Enterprises, L.P. (KEB) became the holder of a promissory note and mortgage on a 1063–acre property known as the Keystone Ranch. The mortgage had initially been granted in 1977, and thereafter there had been numerous conveyances of portions of the Ranch, separating it into several parcels of varying sizes. On April 10, 1998, KEB commenced an action (the KEB lawsuit) to foreclose its mortgage. It named as defendants: the Wolfley Brothers, a partnership, and the members of that partnership (the Wolfleys), who were the original owners of the Keystone Ranch and the makers of the promissory note; Dale and Helen Smedley (the Smedleys), who had purchased the Ranch from the Wolfleys, had assumed the promissory note, and still owned a 475–acre parcel; the respondent Barton Family Trust (the Barton Trust), which owned two parcels totaling about 456 acres; Steven and Diane Schrader, who owned a five-acre parcel; and Walter Haag, who owned a 127–acre parcel.[1]

KEB also named as a defendant Edwin Higley, to whom the Smedleys had deeded approximately 720 acres of the Ranch. The district court held that the deed to Higley constituted a mortgage because it was given as security for the Smedleys' obligation to make certain unspecified improvements upon other real property located in Utah. Once the Smedleys completed those improvements, the Higleys were to reconvey the property to them. On August 10, 1987, however, the Higleys quitclaimed a 245–acre portion of the Ranch to Walter and Mary Barton, who later conveyed it to the Barton Trust. Finally, KEB named as defendants several individuals who owned or had owned minor parcels of the Ranch, but KEB later dismissed them as defendants.

---

1. The acreages are approximate.

On May 27, 1998, Mary Jensen (formerly Mary Barton), as trustee of the Barton Trust, commenced an action (the Barton Trust lawsuit) seeking, among other things, quiet title, subject to the KEB mortgage, to two parcels of the Keystone Ranch. She named as defendants KEB, Edwin and Afton Higley (the Higleys), the Smedley Family Investment Company, a partnership, and its partners (the Smedleys). The Smedleys filed a counterclaim against the Barton Trust and a cross-claim against the Higleys.

On April 25, 2000, the district court granted the Barton Trust leave to file an amended complaint in order to add appellant Lynn A. Jenkins, I (Jenkins), as a defendant in the Barton Trust lawsuit. He accepted service of the summons and complaint on June 8, 2000. Eight months earlier on September 2, 1999, Jenkins had received by quitclaim deed 51% of whatever interest the Higleys had in the Keystone Ranch.

On August 22, 2001, Jenkins filed an answer to the complaint in the Barton Trust lawsuit. He included in his answer a motion to dismiss the KEB lawsuit pursuant to Rule 4(a)(2) of the Idaho Rules of Civil Procedure on the ground that the defendants in that lawsuit had not been served within 180 days after the complaint was filed. His answer also included a "counterclaim" against KEB and "cross-claims" against several of the defendants in the KEB lawsuit and others who were not parties to either lawsuit. At that time, Jenkins was not a party to the KEB lawsuit. On September 11, 2001, the district court consolidated the KEB and Barton Trust lawsuits. The district court later held that upon the consolidation of the two lawsuits, Jenkins became a party to the KEB lawsuit as if he had been permitted to intervene. On April 2, 2002, the district court denied Jenkins's motion to dismiss the KEB lawsuit.

On April 9, 2002, the district judge granted a partial summary judgment quieting the Barton Trust's title against all parties, except KEB, in a 211–acre parcel and the Schraders' title against all parties, except KEB, in a five-acre parcel. The remaining issues were tried to the court, and on May 21, 2002, it entered its findings of fact and conclusions of law. It found that the mortgage assigned to KEB was a valid first lien on the Keystone Ranch that was superior to the rights of the other named parties, that KEB was entitled to have its mortgage foreclosed, and that the five parcels of property should be sold in a particular order to satisfy the outstanding balance on the promissory note. The district court also quieted the Barton Trust's title in a 245–acre parcel. Finally, the court found that Jenkins and the Smedleys had each failed to prove the various claims they had asserted, and it dismissed those claims with prejudice. On May 21, 2002, it entered judgment in accordance with the findings of fact and conclusions of law. KEB and the Barton Trust both requested an award of attorney fees, and the district court granted attorney fees to KEB but not to the Trust. Jenkins timely appealed, and the Trust timely cross-appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in denying Jenkins's motion to dismiss the KEB lawsuit for the failure to serve the defendants within six months of the filing of the complaint?

B. Did the district court's judgment specifying the order in which the various parcels of property would be sold to satisfy KEB's mortgage constitute subdividing the Keystone Ranch in violation of the Lemhi County public policy and the Uniform Partnership Act?

C. Did the district court err in failing to hold that a quitclaim deed to the Bartons was void because it failed to include the grantee's complete address?

D. Did the district court err in failing to find that the Smedleys' waiver of the debtor's rights under the Farm Credit Act of 1971 violated Idaho's public policy?

E. Did the district court err in failing to find that the Barton Trust was created to defraud the creditors of the Keystone Ranch?

F. Did the district court err in failing to find that assignment of the promissory

note and mortgage to KEB defrauded the Smedleys' creditors?

G. Did the district court err in failing to properly account for the leasing of the Keystone Ranch property?

H. Did the district court err in failing to find that the deed to the Sessions was impliedly voided by action of the Lemhi County Planning and Zoning Commission?

I. Did the district court err in failing to find that KEB and the Barton Trust were not required to obtain certificates of authority before filing their respective lawsuits?

J. Did the district court err in failing to award attorney fees to the Barton Trust, the Kellers, the Schraders, and Haag?

K. Are any respondents entitled to an award of attorney fees on appeal?

## III. ANALYSIS

A. **Did the District Court Err in Denying Jenkins's Motion to Dismiss the KEB Lawsuit for the Failure to Serve the Defendants Within Six Months of the Filing of the Complaint?**

■ On August 22, 2001, Jenkins filed a motion to dismiss the KEB lawsuit on the ground that the district court lacked jurisdiction because the defendants in that lawsuit had not been served with the summons and complaint within 180 days of the filing of the lawsuit. Jenkins relied upon Rule 4(a)(2) of the Idaho Rules of Civil Procedure, which provides:

If a service of the summons and complaint is not made upon a defendant within six (6) months after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with 14 days' notice to such party or upon motion.

There is nothing in the record indicating when any of the defendants were served in the KEB lawsuit. As Jenkins acknowledges in his brief, "There is no record on appeal that indicates service or acceptance of service by any of the parties." He takes the position that if there is no evidence in the record showing timely service upon the defendants, the lawsuit must be dismissed.

The Rules of Civil Procedure do not require that a plaintiff file a return of service showing when each defendant was served with process. Because the plaintiff often grants a defendant an extension of time within which to answer, a court cannot even presume that service of process must have occurred within the twenty-day period preceding the filing of a party's answer. Jenkins did not present the district court with anything showing that the defendants were not timely served. He merely alleged in his motion, "Jurisdiction was not obtained by KEB therefore, that cause of action must be dismiss [sic] as a matter of law, without prejudice, for failure to comply with Idaho Rules [sic] of Civil Procedures [sic], Rule 4(a)(2)." There is nothing in the record indicating that the district court erred in denying Jenkins's motion.

B. **Did the District Court's Judgment Specifying the Order in Which the Various Parcels of Property Would Be Sold to Satisfy KEB's Mortgage Constitute Subdividing the Keystone Ranch in Violation of the Lemhi County Public Policy and the Uniform Partnership Act?**

■ The district court found that there were five parcels of real property subject to KEB's mortgage and that they should be sold separately in a particular order because different people owned them. Jenkins argues on appeal that by ordering the parcels to be sold separately, the district court violated the Lemhi County public policy and the Uniform Partnership Act. He does not identify the part of the Uniform Partnership Act allegedly violated. He supports his allegation that selling the parcels separately would violate Lemhi County public policy with copies of minutes of five meetings held in 1981 by the Lemhi County Planning Commission. Jenkins submitted the Planning Commission minutes with his brief, and they are not part of the appellate record. The district court

did not divide the Keystone Ranch into five parcels. That division occurred as a result of various conveyances made years before these lawsuits were commenced.

■ This Court's longstanding rule is that it will not consider issues raised for the first time on appeal. *Row v. State,* 135 Idaho 573, 21 P.3d 895 (2001). Jenkins did not raise these issues before the district court. Therefore, we will not consider these issues on appeal.

### C. Did the District Court Err in Failing to Hold that a Quitclaim Deed to the Bartons Was Void Because It Failed to Include the Grantee's Complete Address?

■ On August 10, 1987, the Higleys quitclaimed a 245–acre portion of the Ranch to Walter and Mary Barton, as tenants in common. The Bartons later conveyed the property to the Barton Trust. The quitclaim deed stated that the Bartons' address was Carmen, Lemhi County, Idaho. At trial, Jenkins argued that the address did not comply with Idaho Code § 55–601, which provides, "The name of the grantee and his complete mailing address must appear on such instrument [conveying an estate in real property]." The district court held that because Carmen, Idaho, was sparsely populated, the address was sufficient. The evidence showed that the Lemhi County Assessor mailed the tax notices to Carmen, Idaho, and that such address was sufficient for the post office to deliver them to the addressee.

There were two grantees named in the deed—Walter Barton and Mary Barton. On appeal, Jenkins contends that the deed was void[2] because "neither party placed their 'complete mailing address' " on the deed. To support that contention, he points to Walter Barton's testimony that in 1987 his address was in Ogden, Utah. Jenkins does not contend, however, that the district court erred in holding that Mary Barton's mailing address was Carmen, Idaho, or that such address was sufficient for her to receive mail. In fact,

Jenkins does not even mention her mailing address in his brief.

Jenkins knows that by August 10, 1987, Walter and Mary Barton were no longer married. He attached to his motion for a new trial a copy of a marriage license showing that on October 7, 1985, Walter Barton married Wendy Roberts. The appellate record includes a copy of a deposition of Mary (Barton) Jensen taken on March 18, 1985, in another case. During that deposition she testified that she had also remarried and that her mailing address was a post office box in Carmen, Idaho. Jenkins does not contend that she was not still living in Carmen on August 10, 1987, when the deed was executed. Where Walter and Mary Barton had divorced each other years prior to that date, there would be no basis for inferring that her mailing address was the same as his in Ogden, Utah. Jenkins has failed to show that the district court erred in finding that Mary Barton's mailing address on the deed was sufficient compliance with Idaho Code § 55–601.

### D. Did the District Court Err in Failing to Find that the Smedleys' Waiver of the Debtor's Rights Under the Farm Credit Act of 1971 Violated Idaho's Public Policy?

■ In connection with an assignment of the promissory note and mortgage on March 7, 1997, to KEB's assignor, the Smedleys signed a waiver and release of certain rights under the Farm Credit Act of 1971. Jenkins argues on appeal that such waiver and release violated Idaho's public policy. Assuming that he had standing to do so, Jenkins did not raise this issue in the trial court. We will therefore not address the issue on appeal. *Row v. State,* 135 Idaho 573, 21 P.3d 895 (2001).

### E. Did the District Court Err in Failing to Find that the Barton Trust Was Created to Defraud the Creditors of the Keystone Ranch?

■ Jenkins alleged that the Bartons' transfer of property into the Barton Trust

---

**2.** Because the deed in this case complied with Idaho Code § 55–601, we do not address the effect of noncompliance with that statute.

was in fraud of creditors. The district court denied that assertion, finding that there was no evidence that the Bartons were insolvent when they created the Barton Trust or that they transferred the two parcels into the Trust with the intent of avoiding their creditors. On appeal, Jenkins argues that such finding was in error. He relies upon Walter Barton's testimony that Mary (Barton) Jensen was the sole trustee because the family was concerned that his new wife may claim an interest in the ranch.

Idaho Code § 55–916 gives a creditor certain remedies when there has been a transfer made in fraud of creditors. Jenkins has not pointed to any evidence showing that Walter Barton's new wife was a creditor when the transfer was made or that he can assert her rights. He has also not even argued that the district court's findings of fact on this issue were clearly erroneous. We therefore find no error.

## F. Did the District Court Err in Failing to Find that Assignment of the Promissory Note and Mortgage to KEB Defrauded the Smedleys' Creditors?

■ Jenkins contends that KEB's assignor did not give the Smedleys any consideration for their waiver of rights under the Farm Credit Act of 1971. He argues that the assignment of the promissory note and mortgage to KEB was therefore void. Because Jenkins did not raise this issue in the trial court, we will not address it on appeal. *Row v. State*, 135 Idaho 573, 21 P.3d 895 (2001).

## G. Did the District Court Err in Failing to Properly Account for the Leasing of the Keystone Ranch Property?

■ Jenkins argues that the district court's calculations concerning lease payments made in the early 1980's indicates that a new cause of action must be commenced and that there needs to be a winding up of the affairs of the Barton partnership. Because Jenkins did not raise this issue in the trial court, we will not address it on appeal. *Row v. State*, 135 Idaho 573, 21 P.3d 895 (2001).

## H. Did the District Court Err in Failing to Find that the Deed to Sessions Was Impliedly Voided by Action of the Lemhi County Planning and Zoning Commission?

■ On May 7, 1981, the Smedleys conveyed a 127–acre parcel to Ben Sessions, and on August 17, 1990, Sessions deeded the parcel to Haag. Jenkins argues on appeal that the deed from the Smedleys to Sessions was void because of action taken on May 16, 1981, by the Lemhi County Planning Commission. Because Jenkins did not raise this issue in the trial court, we will not address it on appeal. *Row v. State*, 135 Idaho 573, 21 P.3d 895 (2001).

## I. Did the District Court Err in Failing to Find that KEB and the Barton Trust Were Not Required to Obtain Certificates of Authority before Filing their Respective Lawsuits?

The district court's Findings of Fact and Conclusions of Law and its Judgment, Decree and Order were entered on May 21, 2002. On June 3, 2002, Jenkins filed a motion for a new trial. One of the issues he raised in that motion was that when KEB filed its lawsuit, it was not registered to do business as a foreign limited partnership in the State of Idaho. He relied upon Idaho Code § 53–256(a), which provides, "A foreign limited partnership transacting business in this state may not maintain any action, suit, or proceeding in any court of this state until it has registered in this state." The district court denied the motion on the grounds that KEB was not transacting business in Idaho within the meaning of the statute and that an attachment to Jenkins's motion showed that KEB had registered by April 18, 2002, before judgment was entered in its lawsuit.

■ The words "transacting business" are not defined in Idaho Code § 53–256. In finding that KEB was not transacting business in Idaho, the district court relied upon Idaho Code §§ 53–657 and 30–1–1501. Section 53–657(1)(g) & (h) provides that a foreign limited liability company is not transacting business in this state by "acquiring indebtedness or mortgages or other security

interests in real or personal property" or by "collecting debts or enforcing any rights in property securing the same." Section 30–1–1501(2)(g) & (h) provides that a foreign corporation is not transacting business in this state by "acquiring indebtedness, mortgages and security interests in real or personal property" or by "collecting debts or enforcing mortgages and security interests in property securing the debts." The district court reasoned that there is no rational basis for holding that a foreign limited liability partnership is transacting business under Idaho Code § 53–256(a) by engaging in conduct that is specifically defined as not constituting transacting business if done by a foreign corporation or a foreign limited liability company.[3]

On appeal, Jenkins does not challenge the district court's reasoning. He does not point to any conduct that would constitute transacting business by KEB. He merely states that this Court should decide whether a foreign partnership is required to obtain a certificate of authority in Idaho before filing a lawsuit. He cites no authority for that proposition. Even Idaho Code § 53–256(a) does not so provide because the statute by its terms only applies to those foreign limited liability partnerships that are transacting business in this state. It does not purport to require a certificate of authority merely to file a lawsuit. Jenkins does not argue on appeal that KEB was transacting business in Idaho. We will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument. *Hei v. Holzer*, 139 Idaho 81, 73 P.3d 94 (2003).

▮ Jenkins also states that we must decide whether a family trust is required to obtain a certificate of authority in this state before filing a lawsuit. That issue was not raised in the district court, and therefore we will not address it on appeal. *Row v. State*, 135 Idaho 573, 21 P.3d 895 (2001).

## J. Did the District Court Err in Failing to Award Attorney Fees to the Barton Trust, the Kellers, the Schraders, and Haag?

▮ On May 31, 2002, the Barton Trust, the Kellers, the Schraders, and Haag filed a memorandum of costs seeking, among other costs, an award of attorney fees against Jenkins, the Smedleys, and the Higleys. The district court issued an order denying their request for attorney fees without a hearing. In its order, the district court stated that they had not provided any statutory authority for their requested award of attorney fees. The memorandum of costs merely cited Rule 54 of the Idaho Rules of Civil Procedure.

▮ In order to be awarded attorney fees, a party must actually assert the statute or other basis for the award. *Bingham v. Montane Resource Assocs.*, 133 Idaho 420, 987 P.2d 1035 (1999). A trial judge cannot award attorney fees on a basis not asserted by the party requesting them. *Id.* Rule 54 of the Idaho Rules of Civil Procedure does not authorize an award of attorney fees. Rule 54(e)(5) merely provides, "Attorney fees, when allowable by statute or contract, shall be deemed as costs in an action and processed in the same manner as costs and included in the memorandum of costs." Therefore, the district court did not err in denying the request for attorney fees filed by the Barton Trust, the Kellers, the Schraders, and Haag.

## K. Are Any Respondents Entitled to an Award of Attorney Fees on Appeal?

▮ KEB seeks an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees can be awarded on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves*, 138 Idaho 64, 57 P.3d 775 (2002). KEB is entitled to an award of attorney fees under that statute. Jenkins's appeal consists

---

**3.** In addition to the statutes upon which the district court relied, Idaho Code § 53–3–1104(a)(1), (7) & (8), which became effective on January 1, 2001, provides that a foreign limited liability partnership is not transacting business in this state by "maintaining, defending, or settling an action or proceeding," by "acquiring indebtedness, with or without a mortgage, or other security interest in property," or by "[c]ollecting debts or foreclosing mortgages or other security interests in property securing the debts."

simply of raising issues on appeal that were not presented to the trial court and asserting errors by the trial court without any reasoned argument or authority supporting such assertions.

 The Barton Trust, the Kellers, the Schraders, and Haag also seek an award of attorney fees on appeal pursuant to Idaho Code § 12–121. In order to be awarded attorney fees under that statute, they must be a prevailing party on the appeal. They have prevailed on Jenkins's appeal, but he has prevailed on their cross-appeal. Since they prevailed in part and he prevailed in part, they are not entitled to an award of attorney fees. *Hoskins v. Circle A Constr., Inc.*, 138 Idaho 336, 63 P.3d 462 (2003).

## IV. CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal, including attorney fees, to KEB for defending against Jenkins's appeal. The other parties must bear their own costs on appeal.

Chief Justice SCHROEDER, and Justices TROUT, KIDWELL and BURDICK concur.

