153 P.3d 1167

**ESTATE of E.A. COLLINS and Estate of E.A. Collins, In the Name of, for, and on Behalf of Kanaka Rapids Ranch, L.L.C., an idaho limited liability company, Plaintiffs–Appellants,**

v.

**Harold R. GEIST and Dorothy J. Geist, husband and wife; Joe Campagna and Cecelia Campagna, husband and wife; Nevada National Exchange, L.L.C., a Nevada limited liability company; Milton N. Joe Camp and Sandra K. Camp,**

husband and wife; Karl Grigg, an individual; Roland M. Parkhurst and Linda J. Parkhurst, husband and wife; John W. Bingham and Deborah A. Bingham, husband and wife; Ron and Kay North Family Trust; Carl E. Danner and Lana S. Danner, husband and wife; William R. Whiting and Sandra L. Whiting, husband and wife; Steven A. Johnson and Barbara A. Johnson, husband and wife; William J. Dorrans & Sandra G. Dorrans Revocable Living Trust; Julian O. Nicholson and Diane Nicholson, husband and wife; and Duwayne Wilson and Sharyn Ann Wilson, husband and wife, Defendants–Respondents,

and

Michael A. Collins, an individual; Alvic, L.L.C., an Idaho limited liability company; Carlo Ferriera, an individual; Russell Purcell and Jane Doe Purcell, husband and wife; John Haycock, an individual; and John Does 1–50, Defendants.

Estate of E.A. Collins, Estate of E.A. Collins in the Name of, for, and on Behalf of Kanaka Rapids Ranch, L.L.C, an Idaho limited liability company, Plaintiffs–Counterdefendants,

v.

Michael A. Collins, an individual; Alvic, L.L.C., an Idaho limited liability company, Defendants–Counterclaimants.

Estate of E.A. Collins and Estate of E.A. Collins, In the Name of, for and on Behalf of Kanaka Rapids Ranch, L.L.C., an Idaho limited liability company, Plaintiffs–Counterdefendants,

v.

Harold R. Geist and Dorothy J. Geist, husband and wife; Joe Campagna and Cecelia Campagna, husband and wife; Nevada National Exchange, L.L.C., a Nevada limited liability company; Milton N. Joe Camp and Sandra K. Camp, husband and wife; Russell Purcell and Jane Doe Purcell, husband and wife; Karl Grigg, an individual; Rolandm. Parkhurst and Linda J. Parkhurst, husband and

wife; John W. Bingham and Deborah A. Bingham, husband and wife; Ron and Kay North Family Trust; Carl E. Danner and Lana S. Danner, husband and wife; William R. Whiting and Sandra L. Whiting, husband and wife; Steven A. Johnson and Barbara A. Johnson, husband and wife; William J. Dorrans and Sandra G. Dorrans Revocable Living Trust; Julian O. Nicholson and Diane Nicholson, husband and wife, Defendants–Counterclaimants.

No. 32018.

Supreme Court of Idaho,
Boise, November 2006 Term.

Feb. 21, 2007.

Derek A. Pica, Boise, for appellants.

Hawley Troxell Ennis & Hawley LLP, Boise, for respondents Wilson. Lynnette M. Davis argued.

Robertson, Hepworth, Slette, Worst & Stover, P.L.L.C., Twin Falls, for respondents Geist, Nevada National Exchange, LLC, Camp, Purcell, Grigg, Bingham, Johnson, Dorrans, Nicholson, Kay North Family Trust, Parkhurst, Campagna, Danner & Whiting. Richard J. Worst argued.

EISMANN, Justice.

This is an appeal from summary judgments dismissing the Respondents from an action seeking to void various conveyances of real property made to them. In seeking to void the conveyances, the Appellants asserted that the person executing the deeds to the Respondents did not have authority to do so and that the conveyances violated the Fraudulent Transfer Act. We affirm the judgments of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On October 22, 1999, Michael Collins and Russell D. Purcell (Purcell) formed a limited liability company named CBS of Idaho, L.L.C. (CBS of Idaho). They did so at the request of E.A. Collins, Michael's father. The articles of organization of the limited liability company stated that management of the company would be vested in managers, and it named Michael and Purcell as the initial managers. E.A. Collins owned a business in Nevada named Collins Building Systems that built steel and Styrofoam houses. CBS of Idaho was formed to market steel and Styrofoam houses in Idaho.

On September 21, 2000, Michael Collins filed articles of amendment to the articles of organization of CBS of Idaho. The articles of amendment changed its name to Kanaka Rapids Ranch, L.L.C. (Kanaka Rapids), re-

moved Purcell as a manager, and added E.A. Collins as a manager.

On September 26, 2000, Collins Brothers Corporation, a Nevada Corporation, deeded to Kanaka Rapids various parcels of real property located in Twin Falls County, Idaho. The corporation was owned by E.A. Collins and his brother, and the transfer was done in consideration for the corporation redeeming all of the stock owned by E.A. Collins. The real property deeded to Kanaka Rapids consisted of various improved and unimproved building lots and a model home. The sole purpose of Kanaka Rapids was to develop and sell that property.

During the period from November 2, 2000 through September 10, 2001, Michael Collins executed deeds on behalf of Kanaka Rapids conveying various lots. The Respondents are persons and entities who were purchasers or subsequent purchasers of the lots.

On January 11, 2001, E.A. Collins died. His estate is being probated in Nevada. It has assets valued at approximately $2.5 million and debts totaling almost $35 million. On March 29, 2004, the Estate of E.A. Collins (Estate) commenced this action on its own behalf and on behalf of Kanaka Rapids seeking to set aside the deeds of the Respondents in order to recover that property for the Estate. The Estate contended that Michael Collins was not a manager of Kanaka Rapids and therefore did not have authority to act on its behalf. It also contended that the deeds were void because Michael Collins did not have written authorization from Kanaka Rapids to sign the deeds on its behalf. Finally, the Estate alleged that the conveyances constituted unlawful transfers and violated the Fraudulent Transfer Act.

The district court granted the Respondents' motions for summary judgment and entered judgments dismissing this action as to them. It determined that Michael Collins had the apparent authority to act on behalf of Kanaka Rapids. It also certified those judgments as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure. The Plaintiffs then appealed.

## II. ISSUES ON APPEAL

1. Is there a genuine issue of material fact as to whether Michael Collins was a manager of Kanaka Rapids?

2. Does a manager of a limited liability company need written authorization to convey real property of the company?

3. Is there a genuine issue of material fact as to whether any of the transfers to the Respondents violated the Fraudulent Transfer Act?

4. Are the Respondents entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–121?

## III. ANALYSIS

### A. Is There a Genuine Issue of Material Fact as to Whether Michael Collins Was a Manager of Kanaka Rapids?

The Articles of Organization filed to form CBS of Idaho stated that Michael Collins and Purcell were the two initial managers. The articles of amendment filed on September 21, 2000, changed its name to Kanaka Rapids Ranch, L.L.C., removed Purcell as a manager, and added E.A. Collins as a manager. Appellants argue that Michael Collins could not have been a manager of Kanaka Rapids because there was no operating agreement.

Idaho Code § 53–601(9) states, " 'Manager' means, with respect to a limited liability company that has set forth in its articles of organization that it is to be managed by managers, the person or persons designated in accordance with section 53–621, Idaho Code." Section 53–621(1) provides, "Unless an operating agreement vests management of the limited liability company in a manager or managers, management of the business affairs of the limited liability company shall be vested in the members." Thus, there must be an operating agreement vesting management of the limited liability company in a manager or managers for them to manage the business affairs of the company.

An "operating agreement" is "any agreement, written or oral, among all of the members as to the conduct of the business and affairs of a limited liability company." I.C. § 53–601(11). Because an operating agree-

ment must have been agreed to by all the members, the first issue is to identify who were the members of Kanaka Rapids?

The Appellants argue that Michael Collins could not be a member of Kanaka Rapids because he did not provide any capital in exchange for his membership. In their arguments, the Appellants focus upon contributions of capital made after September 21, 2000. The articles of amendment filed on that date did not create Kanaka Rapids. It merely changed the name of CBS of Idaho to Kanaka Rapids Ranch, L.L.C. If Michael Collins was a member of CBS of Idaho, he was also a member of Kanaka Rapids.

Idaho Code § 53–626 provides:

A limited liability company interest may be issued in exchange for cash, property, services rendered, guarantee of an obligation of the limited liability company, a promissory note or other obligation to contribute cash or property or to perform services, or other valuable consideration.

During his deposition, Michael Collins was asked whether he provided capital to form CBS of Idaho, and he answered that he did not. Capital is "[m]oney or assets invested, or available for investment, in a business." *Black's Law Dictionary* 200 (Bryan A. Garner ed., 7th ed., West 1999). Idaho Code § 53–626 does not require that a person exchange money or assets for his or her membership in a limited liability company. Michael Collins testified that he used his credit to obtain the construction loans for the two homes that CBS of Idaho constructed. His testimony in this regard is uncontradicted. The use of his credit to obtain the construction loans suffices as valuable consideration under Idaho Code § 53–626.

Relying upon Idaho Code § 53–640(1)(a),[1] the Appellants argue that Michael Collins could not become a member without either a written operating agreement or the written consent of all members. Michael Collins and Purcell were the only persons involved in the formation of CBS of Idaho. Although they formed the limited liability company at the request of E.A. Collins, Michael Collins testified that his father had no role in the company prior to the filing of the articles of amendment on September 21, 2000. His testimony in that regard is uncontradicted. Purcell did not provide any valuable consideration to the company. His involvement was limited to signing his name on the articles of organization. He testified, "My involvement ended the day after—the same day I signed this [the articles of organization] and walked out." When asked if he was a member, Purcell answered, "Nothing more than forming the piece of paper." The evidence in the record shows that Michael Collins was the only person who could be a member of CBS of Idaho. Where there is only one person involved in a limited liability company, that person is not prevented from becoming a member because he or she did not give written consent.

▇ An operating agreement is "any agreement, written or oral, among all of the members as to the conduct of the business and affairs of a limited liability company." I.C. § 53–601(11). Since Michael Collins was the only member of CBS of Idaho, there would be an operating agreement if he was in agreement regarding the conduct of the business and affairs of the company. It is undisputed that he was because he ran the company by himself. Because Michael Collins, the sole member, obviously agreed that he would conduct the business and affairs of CBS of Idaho, there was an operating agreement for CBS of Idaho, and Michael Collins qualified as being a manager.

On September 21, 2000, Michael Collins filed articles of amendment changing the name of the limited liability company to Kanaka Rapids Ranch, L.L.C. (Kanaka Rapids), removing Purcell as a manager, and adding E.A. Collins as a manager. Purcell had no objection to being removed as a manager.[2] It is unclear whether E.A. Collins was added

---

1. That statute provides:

(1) Subject to subsection (2) of this section [specifying the effective time of admission], a person may become a member in a limited liability company:
(a) In the case of a person acquiring a limited liability company interest directly from the limited liability company, upon compliance with an operating agreement or, if an operating agreement does not so provide in writing, upon the written consent of all members.

2. Purcell was listed as a manager in the articles of organization. Unless required in the operating agreement, a manager does not have to be a

as both a manager and a member of Kanaka Rapids. In his affidavit filed on August 16, 2004, Michael Collins stated that his father was added as a member. At his deposition taken about one month later, Michael Collins testified that he did not know if his father was a member. His father could become a member by complying with a written operating agreement or upon the written consent of all members. I.C. § 53–640(1)(a). Kanaka Rapids did not have a written operating agreement, and there was no written consent of all members unless the Articles of Amendment would so qualify since they were signed by the only other member, Michael Collins. That document, however, does not indicate on its face that E.A. Collins is being added as a member. The form has a preprinted line stating, "The information on managers/members shall be amended as follows:" and then states that Purcell is being deleted and E.A. Collins is being added. It does not state whether he is being added as a manager, a member, or both. Since he replaced Purcell who was listed as a manager in the Articles of Organization, it would seem that E.A. Collins was added as a manager. Consistent with the standard of summary judgment, however, we will assume that E.A. Collins became a member on September 21, 2000, when the articles of amendment were filed.

Appellants argue that Michael could not be a manager without an operating agreement for Kanaka Rapids and that in his deposition he testified that the company had no operating agreement. Implicit in their argument is once a new member is added, there must be a new operating agreement.

In his affidavit filed on August 16, 2004, Michael stated that he and his father agreed that he would manage Kanaka Rapids. One month later in his deposition, Michael testified that Kanaka Rapids did not have an operating agreement. In an affidavit filed on December 6, 2004, Michael Collins stated he thought the question referred to a written operating agreement. He also reiterated that his father had agreed Michael would manage the company and his father had no involvement in its day-to-day operations.

The Appellants rely solely upon Michael Collins's statement in his deposition to argue that there was no operating agreement, or at least to argue that there was a genuine issue of material fact as to whether there was an operating agreement. Michael Collins gave a plausible explanation for the statement he made in his deposition, and the other evidence in the record clearly shows that there was an operating agreement. An operating agreement can be "any agreement, written or oral, among all of the members as to the conduct of the business and affairs of a limited liability company," I.C. § 53–601(11). The uncontradicted evidence is that E.A. Collins was living in Las Vegas, Michael Collins was living in Idaho, and E.A. Collins left the management of Kanaka Rapids to his son Michael. Appellants have not pointed to any evidence indicating that E.A. Collins was in any way involved in conducting the business and affairs of Kanaka Rapids. "[A] mere scintilla of evidence will not create a genuine issue of material fact sufficient to preclude summary judgment." *Wait v. Leavell Cattle, Inc.*, 136 Idaho 792, 798, 41 P.3d 220, 226 (2001). There is no genuine issue of material fact on this issue. The conduct of Michael and E.A. Collins clearly showed that they had agreed that Michael would conduct the business and affairs of Kanaka Rapids. Thus, Michael Collins qualified as a manager of Kanaka Rapids.

Appellants argue that there is no evidence that Michael Collins contributed any capital or valuable consideration to Kanaka Rapids. There was no requirement that he do so. Kanaka Rapids was a continuation of CBS of Idaho. Neither the name change nor the investment made by E.A. Collins required an additional investment by Michael Collins in order for him to remain a member.

**B. Does a Manager of a Limited Liability Company Need Written Authorization to Convey Real Property of the Company?**

The Appellants contend that the conveyances of the lots to the Respondents were

---

member of the limited liability company. I.C. § 53–621(2)(b). After being given a copy of the articles of amendment deleting him as a manager, Purcell testified, "I got a phone call from

Michael telling me they were going to take me off of CBS and Al [Michael's father] was going to be put on CBS. My answer was great and that was it, but I never saw the document."

void because Michael Collins did not have written authorization from Kanaka Rapids to sign the documents on its behalf. In making this argument, Appellants rely upon Idaho Code § 55–601, which provides, "A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." They also rely upon the similar requirement in Idaho Code § 9–503.[3]

■ Idaho Code § 53–616(2)(b) provides:

Every manager is an agent of the limited liability company for the purpose of its business or affairs, and the act of any manager, including but not limited to, the execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business or affairs of the limited liability company of which he is a manager binds the limited liability company, unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter, and the person with whom the manager is dealing has knowledge of the fact that the manager has no such authority.

As a manager, Michael Collins had the apparent authority to bind Kanaka Rapids when he executed in its name an instrument "for apparently carrying on in the usual way [its] business or affairs." The usual business of Kanaka Rapids was to develop and sell the real estate lots. The Appellants have not pointed to any evidence showing that Michael Collins lacked the actual authority to convey the lots and that any of the Respondents had knowledge of any such lack of actual authority.

■ Idaho Code § 53–634(5)(a) provides, "Title to property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any manager in the name of the limited liability company." A limited liability company, not being a living being, can only act through its agents. As a manager, Michael Collins was an agent of Kanaka Rapids, and Idaho Code § 53–634(5)(a) granted him statutory authority to execute instruments transferring the lots to the Respondents. "It is well established that '[a] specific statute ... controls over a more general statute when there is any conflict between the two.'" *Tuttle v. Wayment Farms, Inc.*, 131 Idaho 105, 108, 952 P.2d 1241, 1244 (1998) (quoting *Ausman v. State*, 124 Idaho 839, 842, 864 P.2d 1126, 1129 (1993)). Thus, Idaho Code §§ 55–601 and 9–503 do not apply insofar as they required written authorization for Michael Collins to sign the conveyances on behalf of Kanaka Rapids.

## C. Is There a Genuine Issue of Material Fact as to Whether Any of the Transfers to the Respondents Were Made with the Intent to Hinder, Delay, or Defraud any Creditor?

During the period from November 2, 2000 through September 10, 2001, Kanaka Rapids sold parcels of real property to the Geists; the Nevada National Exchange, L.L.C.; the Camps; Karl Grigg; the Parkhursts; the Binghams; the Ron and Kay North Family Trust; the Danners; the Whitings; and the Wilsons.[4] The Appellants alleged that the transfers of property made by Kanaka Rapids to these Respondents were unlawful transfers prohibited by Idaho Code §§ 55–901 through 55–909 and that they were fraudulent transfers under the Uniform Fraudulent Transfer Act, Idaho Code §§ 55–910 *et seq.*

In their Amended Complaint, the Appellants alleged that each of the transfers by

---

3. That statute provides:

No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

4. On December 30, 2003, the Camps conveyed their property to the Johnsons; on August 28, 2003, the Danners and Whitings conveyed one lot to the William J. Dorrans & Sandra G. Dorrans Revocable Living Trust; and on November 21, 2003, the Binghams conveyed their lot to the Nicholsons.

Kanaka Rapids were in fraud of creditors in violation of Idaho Code § 55–907. That statute has no application because it only deals with a presumption of fraud arising under certain circumstances involving transfers of personal property. The Appellants apparently intended to rely upon Idaho Code § 55–906, which voids transfers of property made "with intent to delay or defraud any creditor or other person of his demands." The Appellants also alleged that each transfer violated Idaho Code § 55–913(1)(a) because it was made with "actual intent to hinder, delay, or defraud any creditor of the debtor."

With respect to the claimed violation of Idaho Code § 55–906, the district court granted summary judgment against Appellants based upon Idaho Code § 55–909, which provides:

> The provisions of this chapter do not in any manner affect or impair the title of a purchaser for a valuable consideration, unless it appears that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of his grantor.

The district court held that the Appellants had not presented evidence showing either that the Respondents failed to pay a valuable consideration or that they had previous notice of any fraudulent intent, assuming it existed. The Appellants do not argue that no consideration was given. Rather, they argue it was not valuable consideration because it was not sufficient consideration.

The only appraisal in the record was presented by the Wilsons. They paid $25,000 for their lot, and their tax assessment notice shows that the county assessor valued it at $25,666. The Appellant's argument is based upon the amount designated in the stock redemption transaction between E.A. Collins and Collins Brothers Corporation as the total value of the property transferred to Kanaka Rapids. Michael Collins's accountant testified that the value of the land transferred into Kanaka Rapids was $2.1 million based upon the value used in the stock redemption, but he did not know whether that was the fair market value. Dividing the number of lots, both developed and undeveloped, into

this book value, the Appellants argue that the lots sold to the Danners and Whitings were worth $584,111.71 while they only paid $220,000, and the lots sold to the Geists were worth $175,111.37 while they only paid $20,000. The Appellants do not cite the amounts paid by any of the other Respondents. They do, however, present arguments regarding the transactions with Michael A. Collins, Carlo Ferriera, and Purcell, none of whom are respondents on appeal. The Appellants apparently contend that all of the conveyances should be considered as a group and that if one was not made for sufficient consideration, then all of them should be set aside.

The Appellants also argued that the sales of the lots purchased by the Respondents constituted transfers in fraud of creditors in violation of Idaho Code § 55–913(1)(a). That statute provides:

> A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

With respect to that claim, Idaho Code § 55–917(1) provides as a defense, "A transfer ... is not voidable under section 55–913(1)(a), Idaho Code, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige." The district court did not address whether there was evidence in the record creating a genuine issue of material fact as to whether each of the transfers were made for a reasonably equivalent value. Rather, the district court relied upon its ruling with respect to Idaho Code § 55–909.

■ We need not address whether there is evidence in the record creating a genuine issue of material fact as to whether the Respondents paid valuable consideration or reasonably equivalent value for their respective properties. We likewise need not address whether there is evidence indicating that any of the Respondents had previous notice of the fraudulent intent of the Respondent's

immediate grantor, or of the fraud rendering void the title of such grantor.

In order for the Appellants to set aside any of the conveyances to Respondents on the ground that the conveyance was done with the actual intent to hinder, delay, or defraud a creditor, the Appellants must show that either of them is a creditor of Kanaka Rapids. It was Kanaka Rapids who owned the parcels of real property at issue, and it was Kanaka Rapids who transferred those properties. The Appellants have not alleged or argued that either of them are creditors of Kanaka Rapids. Kanaka Rapids as a plaintiff is certainly not a creditor of Kanaka Rapids. The Estate is likewise not a creditor of Kanaka Rapids. It has not alleged or argued that it has any claim against Kanaka Rapids. It has alleged that Michael Collins converted the property of Kanaka Rapids to his own use, injuring Kanaka Rapids, and that as a result Kanaka Rapids should be judicially dissolved. That, however, is not a claim against Kanaka Rapids. The undisputed evidence in the record from Michael Collins's accountant is that Kanaka Rapids has no debts. Since neither of the Appellants are creditors of Kanaka Rapids, neither of them can bring an action alleging that Kanaka Rapids transferred any property with the intent to hinder, delay, or defraud any of its creditors. In fact, the Appellants have not shown that Kanaka Rapids had any creditors.

**D. Are the Respondents Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12–121?**

■ The Respondents request an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees can be awarded on appeal under this statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves*, 138 Idaho 64, 57 P.3d 775 (2002). If there is a legitimate issue presented by the appeal, attorney fees cannot be awarded. *Lamprecht v. Jordan*, 139 Idaho 182, 75 P.3d 743 (2003); *D & M Country Estates Homeowners Ass'n v. Romriell*, 138 Idaho 160, 59 P.3d 965 (2002).

■ In this case, the appeal was not devoid of legitimate issues of law. We had not previously ruled whether Idaho Code § 55–601 requires that the manager of a limited liability company have written authorization to sign a conveyance of real property on behalf of the company. There was also a legitimate issue regarding whether there was a genuine issue of material fact concerning whether Michael Collins met the statutory requirements to be a manager of Kanaka Rapids. Therefore, we will not award the Respondents attorney fees on appeal.

## IV. CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal, but not attorney fees, to the Respondents.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES concur.

